T.C. Summary Opinion 2009-108


UNITED STATES TAX COURT



ROBERT RENE JIMENEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25190-06S.                    Filed July 13, 2009.



Robert Rene Jimenez, pro se.

<u>Sarah A. Herson</u>, for respondent.



GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are whether for 2004 petitioner is entitled to:  (1) Dependency exemption deductions for his two children; (2) a child tax credit; and (3) head of household filing status.

## Background

Some of the facts have been stipulated and are so found. The stipulations of facts, attached exhibits, and supplemental exhibits are incorporated herein by this reference.  Petitioner resided in California when he filed his petition.

Petitioner earned a bachelor's degree in history and sociology from the University of Arizona and a master's degree in sociology from the University of Michigan.  On a date not provided in the record, petitioner married Claudia Flores de Jimenez.  They had two children together, F born in 1995 and R born in 1997.[1]  Petitioner enrolled in a Ph.D. program at the University of Michigan, but the couple decided to move to Los Angeles where petitioner planned to continue his Ph.D. program. However, because his income was limited to a fellowship stipend, the plan proved impractical.  Petitioner stopped his Ph.D.

---

[1] The names of minor children are redacted.  See Rule 27(a)(3).

studies and became active in the local community, becoming, for example, president of a local parents' advisory council.

The marriage deteriorated, causing Ms. Jimenez to move out of their joint residence on December 1, 2002. She initially left the children in petitioner's custody while she settled into a residence in an adjacent town 2 to 3 miles away. During December Ms. Jimenez stopped by on an irregular schedule to spend time with the children. To make her visits more consistent, on January 4, 2003, the couple signed a separation agreement that petitioner had prepared. The agreement provided in pertinent part that they would maintain joint legal and physical custody of the children, formalized the times Ms. Jimenez would have custody, and established petitioner's home as the children's primary residence. The agreement also provided that Ms. Jimenez would have to provide child support if her income exceeded $40,000, which it did not during 2003 or 2004.

On February 1, 2003, petitioner leased a two-bedroom apartment on the bottom floor of a two-story 22-unit apartment complex. The rental agreement listed the two children as residing there. Petitioner's mother, Rebecca Zavala, was the manager of the apartment complex and lived with her husband in a house next door. In 2004 petitioner's rent was about $750 per month.

The proximity to the children's grandmother proved to be convenient to everyone involved. On days when petitioner had custody, Ms. Zavala would drive the children to and from school or from sports activities after school, and she looked after the children until petitioner returned home from work. The schools were about a 10- to 20-minute drive from her home.

Similarly, on days when it was Ms. Jimenez's turn to have custody, Ms. Zavala would continue to drive the children to and from school or from sports activities; and when it was petitioner's turn to have custody, Ms. Jimenez would pick up and return the children to Ms. Zavala's home. When school was out on holidays or in summer and it was Ms. Jimenez's day for custody, Ms. Zavala would typically drop off the children at Ms. Jimenez's residence, and Ms. Jimenez would return the children to Ms. Zavala's home.

During the weekends Ms. Zavala would also look after the children and shuttle them to weekend activities. For example, Ms. Zavala served as a team mother in a weekend softball league.

In February 2003 Ms. Jimenez petitioned the Superior Court of the State of California for the County of Los Angeles for dissolution of the marriage. In August 2003 petitioner filed a motion for an order to show cause with respect to custody of the children. On October 31, 2003, Ms. Jimenez and petitioner each appeared without an attorney at a hearing before the Los Angeles

court to determine formal custody arrangements for the children. Court-appointed counsel for the children also appeared.

On December 11, 2003, the Los Angeles court issued an order granting joint legal and physical custody of the children and splitting the children's time between the two parents. In summary, the court placed custody with Ms. Jimenez on Wednesdays, Thursdays, and Sundays totaling three-sevenths or 43 percent of the week while petitioner had custody for the other 57 percent.

With respect to schooling, the December 11, 2003, Los Angeles court order decreed that F should remain a student at La Primaria Elementary until F completed the third grade at which time the parties should cooperate in sending F to Mulhill Elementary School. The court also ordered that R should remain a student at Mulhill Elementary School. The court set a followup conference for January 30, 2004.

During 2004 petitioner worked in two capacities for the University of California Cooperative Extension. In the first half of the year he served as a center director for at-risk youth at a set of housing projects, and in the second half of the year he served as an associate director providing social services within the same housing projects. Ms. Jimenez worked for Hometown Buffet, earning around $8 per hour plus tips.

The custody arrangements continued into 2004. Ms. Jimenez eventually secured representation, and the parties conducted a

conference on May 7, 2004, with the Los Angeles court. Petitioner appeared without counsel.  The Los Angeles court conducted a modification hearing on June 11, 2004, at which petitioner did not appear.

On June 17, 2004, the Los Angeles superior court filed an "Order After Hearing on [Ms. Jimenez's] Order to Show Cause Re: Custody, Support, and Attorney's Fees."  The court awarded primary care of the two children to Ms. Jimenez and awarded her custody for 71 percent of the time and the remaining 29 percent to petitioner.  The court modified the existing custody order because of changes in circumstance; namely, the children needed Ms. Jimenez to help them with their schoolwork during the week, and a change in Ms. Jimenez's work schedule allowed her to drop off and pick up the children from school daily.

Additionally, the court found that petitioner earned about $5,000 per month while Ms. Jimenez earned about $900 per month, resulting in the court's awarding Ms. Jimenez child support of $1,094 per month and spousal support of $481 per month.  The court also found that petitioner was in arrears by $1,575 in combined child and spousal support.  The court ordered petitioner to pay $1,000 of Ms. Jimenez's attorney's fees and garnished petitioner's wages to make up the arrearage and to pay his share of the attorney's fees.

Petitioner regarded the Los Angeles court's order as unlawful and appealed unrepresented to the California Court of Appeals. The record is silent with respect to the outcome of the appeal.

On July 12, 2004, the Los Angeles superior court entered minutes to clarify the June 17, 2004, order with respect to choice of school and vacation permission. The court awarded Ms. Jimenez the choice of school and granted her request that R attend La Primaria Elementary School starting in the fall of 2004. The court also allowed Ms. Jimenez to take the children for a 7-day vacation and granted petitioner a similar uninterrupted 7-day period in July, August, or September as long as his timing did not interrupt the vacation plans of Ms. Jimenez or the children's schooling.

The months that followed were highly contentious between the parties. Petitioner did not take the children on vacation; however, Ms. Jimenez took the children to Mexico in July 2004. Petitioner attempted to obtain an ex parte abduction prevention order from the Los Angeles court, but the court denied his motion. At times, petitioner refused to timely return the children, causing Ms. Jimenez to contact the police. At other times petitioner insisted on seeing the children, and he called the police. In January 2005 the Los Angeles court served petitioner with a contempt of court notice for failing to comply

with the June 17, 2004, court order.  The couple formally divorced in 2006.

Petitioner timely filed his 2004 Federal income tax return as a head of household, claiming two dependency exemption deductions for the children and a child tax credit of $2,000.  He reported wages of $51,676.  Ms. Jimenez also filed her own separate individual 2004 Federal income tax return, claiming the two children as her dependents.

Respondent examined petitioner's 2004 tax return.  Because Ms. Jimenez was the custodial parent and had claimed the children as dependents, respondent disallowed petitioner's dependency exemption deductions for the two children.  Respondent also disallowed petitioner's child tax credit and adjusted petitioner's filing status to single, which caused a statutory reduction in petitioner's standard deduction amount.  As a result, respondent issued a notice of deficiency dated September 11, 2006, determining a Federal income tax deficiency for 2004 of $4,895.

Petitioner timely petitioned this Court, requesting that the Court accept his 2004 Federal income tax return as originally filed.  At the conclusion of the trial respondent requested that the Court hold the record open for an additional 30 days for the parties to obtain a copy of the Los Angeles court's June 17, 2004, order and a copy of the children's school records for 2004-

05. We granted the request and ordered the parties to meet and present the documents to the Court in a joint supplemental stipulation of facts.

Petitioner timely submitted a copy of the 2004-05 school records dated June 5, 2008, to respondent; however, petitioner did not provide a copy of the June 17, 2004, Los Angeles court order. Respondent obtained a copy of the order and a copy of the July 12, 2004, court minutes directly from the Los Angeles court records department.

Petitioner and respondent met on June 19, 2008, but could not agree on a joint supplemental stipulation because petitioner insisted that the June 17, 2004, Los Angeles court order was "unlawful". On June 23, 2008, respondent filed a motion to supplement the record and attached a copy of the June 17, 2004, Los Angeles court order, the July 12, 2004, court minutes, and a copy of the children's 2004-05 school records. On June 24, 2008, petitioner submitted a motion to supplement the record and attached a copy of the identical 2004-05 school records, but he did not include a copy of the Los Angeles court order or minutes.

This Court granted respondent's motion to supplement the record, received the documents into evidence, and denied petitioner's request to supplement the record because the Court had already received the school records into evidence. The Court then closed the record.

The school records dated June 5, 2008, show that for the September 2004 through June 2005 school year F was in the fourth grade at Twin Lakes Elementary School and R was in the first grade at La Primaria Elementary School. Both schools listed Ms. Jimenez as the custodial parent and petitioner as an additional contact.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Petitioner argued that he satisfied the elements for a burden shift; however, he did not produce a copy of the June 17, 2004, Los Angeles court custody order and the clarifying minutes of July 12, 2004, despite repeated requests by respondent and despite our grant of an additional 30 days to produce the order. Accordingly, the burden of proof remains with petitioner.

Deductions, including dependency exemption deductions, are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice

Co. v. Helvering, 292 U.S. 435, 440 (1934).  Specifically relevant here is that taxpayers must maintain records sufficient to substantiate their claimed deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner asserted two pertinent grounds in his petition to contest respondent's determinations:  (1) He maintained a residence where the children resided for more than one-half of 2004; and (2) he paid at least one-half of the children's financial support during 2004.

In his pretrial memorandum petitioner proposed a third ground for relief, contending that in the event the Court finds that Ms. Jimenez and he had approximately the same amount of custodial time during 2004, then the Court should hold that he is entitled to claim the children as dependents because he had higher adjusted gross income during 2004 than did Ms. Jimenez.  With regard to this third contention, the Working Families Tax Relief Act of 2004, Pub. L. 108-311, secs. 201, 208, 118 Stat. 1169, 1178, amended section 152 and added adjusted gross income as a consideration under section 152(c)(4)(b)(ii) effective "for tax years beginning after December 31, 2004."  Since the year at issue is 2004, the law on which petitioner relies was not yet in effect.  Moreover, for the reasons stated below, we find that for 2004 petitioner did not have approximately the same amount of custodial time as did Ms. Jimenez.

A taxpayer may generally claim a dependency exemption deduction for each dependent, and as relevant here a dependent includes a son or daughter for whom the taxpayer paid over half of the child's support during the year. Secs. 151(a), (c)(1), 152(a)(1). However, special rules apply for children of divorced or separated parents as in the present circumstance. Sec. 152(e).

In particular, if a child receives "over half of his support during the calendar year from his parents" where: (1) The parents are "divorced or legally separated under a decree of divorce or separate maintenance" or "are separated under a written separation agreement," (2) the parents lived "apart at all times during the last 6 months of the calendar year," and (3) the "child is in the custody of one or both of his parents for more than one-half of the calendar year," then the child is treated as receiving over half of his support "from the parent having custody for a greater portion of the calendar year" (the "custodial parent"), and as a result the custodial parent is entitled to the dependency exemption deduction. Sec. 152(e)(1); Miller v. Commissioner, 114 T.C. 184, 187-189 (2000).

Petitioner and Ms. Jimenez lived under a judicial separation agreement for all of 2004; they lived apart at all times during the last 6 months of 2004; and the children were in the custody of one or the other of the parents during 2004. Accordingly,

petitioner and Ms. Jimenez met the criteria for section 152(e)(1), and our analysis therefore turns to finding which parent was the custodial parent for 2004.

Petitioner failed to maintain a log or a calendar to corroborate his assertion of greater custody time. For example, compare the result in Smith v. Commissioner, T.C. Memo. 2006-163, where the taxpayer's failure to corroborate his testimony with documents, receipts, and witnesses helped defeat the taxpayer's claim of custody, with the result in McCullar v. Commissioner, T.C. Memo. 2003-272, where the taxpayer's log with detailed descriptions and multicolored inks and fonts was probative evidence of the time the taxpayer spent with his child.

The record before us, namely the December 11, 2003, Los Angeles court order, petitioner's testimony, and the testimony of his mother, Ms. Zavala, establishes that petitioner had custody of the children for 57 percent of the time during the first 5-1/2 months of the year from January 1 through June 16, 2004. However, for the next 6-1/2 months from June 17, 2004, the custody arrangement swung sharply in Ms. Jimenez's favor.

The June 17, 2004, Los Angeles court order granted Ms. Jimenez custody of the children for 71 percent of the time from June 17, 2004, forward. The 2004-05 school records corroborate the shift in custody. Additionally, Ms. Jimenez had uninterrupted custody of the children while vacationing with the

children for 1 or 2 weeks in Mexico during the summer of 2004. Simple math compels us to find that for 2004 Ms. Jimenez had custody of the children for more than one-half of 2004. For all of the foregoing reasons, we find that Ms. Jimenez was the children's custodial parent and petitioner was the noncustodial parent for 2004.

However, an exception to the general rule of section 152(e)(1) exists if "the custodial parent signs a written declaration" stating that the custodial parent "will not claim such child as a dependent" and the noncustodial parent (defined as "the parent who is not the custodial parent") attaches the declaration to the noncustodial parent's tax return. Sec. 152(e)(2); Miller v. Commissioner, supra at 188-189. The declaration must be made either on Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, or on a statement conforming to the substance of that form. Miller v. Commissioner, supra at 189.

Petitioner did not attach Form 8332 or any declaration to his 2004 tax return, he did not assert that Ms. Jimenez signed a release, and no evidence indicates that Ms. Jimenez wanted to release the dependency exemption deductions. In fact, she claimed the children as dependents on her own 2004 Federal income tax return.

Accordingly, for the foregoing reasons, we sustain respondent's determination that petitioner is not entitled to a dependency exemption deduction for either of the children for 2004.

With respect to the child tax credit for 2004, a taxpayer may claim a credit against Federal income tax of up to $1,000 for each qualifying child of the taxpayer. Sec. 24(a). To qualify for the credit, the "qualifying child" must: (1) Be an individual for whom the taxpayer is allowed a dependency exemption deduction under section 151 for the taxable year, (2) not have attained age 17 as of the close of the year, and (3) bear one of the prescribed relationships to the taxpayer, including, as pertinent here, that of a son or a daughter. Sec. 24(c). Because we have already found that petitioner is not entitled to dependency exemption deductions for the children in 2004, petitioner is not entitled to a child tax credit for either child for 2004.

Finally, to qualify for head of household filing status, the taxpayer must: (1) Not be married as of the close of the year, (2) have paid for more than half of the cost of maintaining a household, and (3) have maintained the household as the principal place of abode for more than half of the year for a qualifying person, including a son or daughter. Sec. 2(b)(1) and (2)(B). Because we have already found that petitioner's residence was not

the principal place of abode for the children for more than half of 2004, petitioner is not entitled to head of household filing status for 2004.

To reflect our disposition of the issues,

Decision will be entered

for respondent.